ABRAHAM, FRUCHTER & TWERSKY, LLP
Ian D. Berg (SBN: 263586)
iberg@aftlaw.com
Takeo A. Kellar (SBN: 234470)
tkellar@aftlaw.com
12526 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone:  (858) 792-4810
Facsimile:  (858) 792-3449

*Counsel for Plaintiff Board of Trustees
of City of Hialeah Employees' Retirement System*

CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
Edward D. Chapin (SBN: 053287)
echapin@cfsblaw.com
Francis A. Bottini, Jr. (SBN: 175783)
fbottini@cfsblaw.com
Douglas J. Brown (SBN: 248673)
dbrown@cfsblaw.com
550 West C Street, Suite 2000
San Diego, California 92101
Telephone:  (619) 241-4810
Facsimile:  (619) 955-5318

*Counsel for Plaintiff Dave Lucia*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, derivatively on behalf of Diamond Foods, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. MENDES, STEVEN M. NEIL, LAURENCE M. BAER, EDWARD A. BLECHSCHMIDT, JOHN J. GILBERT, ROBERT M. LEA, GLEN C. WARREN, JR., RICHARD G. WOLFORD and ROBERT J. ZOLLARS,<br><br>Defendant.<br><br>-and-<br><br>DIAMOND FOODS, INC.<br><br>Nominal Defendant. | Case No.: CV-11-05692 WHA<br><br>PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING APPOINTMENT OF CO-LEAD PLAINTIFFS AND CO-LEAD COUNSEL<br><br>Judge: The Honorable William H. Alsup<br><br>Date Action Filed:  November 28, 2011 |

| | |
|---|---|
| DAVE LUCIA, derivatively on behalf of DIAMOND FOODS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> LAURENCE M. BAER, EDWARD A. BLECHSCHMIDT, JOHN J. GILBERT, ROBERT M. LEA, MICHAEL J. MENDES, JOSEPH P. SILVEIRA, STEVEN M. NEIL, GLEN C. WARREN, JR., RICHARD G. WOLFORD, and ROBERT J. ZOLLARS, <br><br> Defendants, <br><br> - and - <br><br> DIAMOND FOODS, INC., <br><br> Nominal Defendant. | Case No.: CV-11-06417 WHA <br><br> Judge: Hon. William H. Alsup <br><br> Date Action Filed: December 19, 2011 |

Plaintiffs Board of Trustees of City of Hialeah Employees' Retirement System ("Hialeah") and Dave Lucia ("Lucia" and together with Hialeah, the "Plaintiffs"), by their attorneys listed below, respectfully submit this response to the Order to Show Cause Regarding Appointment of Co-Lead Plaintiffs and Co-Lead Counsel in compliance with this Court's Order dated February 7, 2012. As shown below, Plaintiffs are well-qualified to pursue this action on behalf of Diamond Foods, Inc. ("Diamond" or the "Company"), are committed to the vigorous prosecution of these actions, have selected counsel with exceptional experience and qualifications in this type of litigation, and worked and will continue to work cooperatively and efficiently in prosecuting the claims asserted in these actions. As such, Plaintiffs respectfully request that they be appointed co-lead plaintiffs and that their counsel be appointed as co-lead counsel. Plaintiffs do not believe a noticed motion is necessary with respect to the appointment of lead plaintiffs and lead counsel because only two actions have been filed, there is no dispute among the parties as to the proposed leadership structure, Plaintiffs' counsel have agreed to avoid duplication of effort, and because a co-lead counsel structure may benefit Plaintiffs' prosecution of the actions.

## I. SUMMARY OF THE FACTS

These actions arise out of Diamond's accounting for certain payments that it made to walnut growers. As Diamond just acknowledged in a press release dated February 8, 2012, the Company accounted for those payments improperly and it will have to restate its financial statements for the past two years.

Diamond processes, markets and distributes snack products, one of which is walnuts. It enters into agreements with walnut growers to purchase their crops. Such agreements typically provide that the walnut grower deliver their entire crop to Diamond during the fall harvest season, with an initial minimum payment made, and a later payment determined after the walnut crop is received. The purchase price is to be determined in good faith by the Company, taking into account factors such as crop size and quality and market conditions.

On April 5, 2011, Diamond's proposed purchase of the Pringles brand from The Procter & Gamble Company ("P&G") was announced. The purchase was to be made by a combination of Diamond stock and the assumption by Diamond of Pringles debt. The amount of debt to be assumed by Diamond would vary somewhat by the price of its stock. For example, if Diamond's stock price declined below certain amounts, Diamond would be obligated to assume a greater amount of Pringles debt. The announcement stated that the transaction would close by the end of December 2011.

During September 2011, however, media reports began to appear that questioned some of Diamond's payments to walnut growers. In a September 27, 2011 article, *The Wall Street Journal* stated that: "As walnut prices surged for the 2010 crop, Diamond paid growers much less than most buyers . . . yet on September 2, Diamond made an extra 'momentum' payment to growers they hadn't received in past years. The payment sizes varied, but averaged 25 cents a pound or more." It was further stated in the article that the payment would have significantly impacted Diamond's financial results had it been made prior to the close of Diamond's 2011 fiscal year ended July 31, 2011, and estimated that these momentum payments conservatively totaled $50 million.

On November 1, 2011, after the market closed, Diamond announced that its Chairman of the Audit Committee had received an "external communication regarding Diamond's accounting for certain crop payments to walnut growers." Diamond also announced that the closing of the Pringles acquisition was now expected to occur in the first half of 2012 rather than by year end 2011. In reaction to this announcement, one analyst stated that "the onus now lies on Diamond to prove there have been no irregularities."

On this news, the Company's stock price declined from a closing price of $64.12 per share on November 1st to a closing price of $51.57 per share on November 3rd. Subsequently, on Saturday, November 5, 2011, it was reported that Diamond's accounting for the walnut growers' payments would have had a significant impact on its reported earnings if those payments had been accounted for in fiscal year 2011. One research group estimated that Diamond's earning would have been $1.14 per share for fiscal year 2011 instead of the $2.61 per share that the

Company reported.

On Monday, November 7, 2011, the first trading day after the above news was disclosed, the price of Diamond's shares closed at $39.09 per share. If the Pringles transaction was to proceed at all, it would now not only be consummated months later than announced, but also would require Diamond to assume a greater amount of debt to close that transaction. The Company's losses in its stock price inflicted substantial damage to members of the investing public, and these defrauded investors soon named Diamond as a defendant in securities fraud actions pending in this Court (the "Pending Securities Fraud Actions"). As a result, Diamond is subject to great expense and the prospect of substantial liability. Moreover, the Company's standing with the investment community, walnut growers and the public has been adversely affected.

Since this news began to be revealed, the Securities and Exchange Commission (the "SEC") and the U.S. Attorney's office for the Northern District of California have each commenced investigations into Diamond and its accounting. This week, on February 8, 2012, the Company announced that its financial statements for the fiscal years 2010 and 2011 needed to be restated. The Company had made payments of approximately $20 million to growers in August 2010 and approximately $60 million in September 2011 that were not accounted for in the correct periods. The Company's press release also stated that material weaknesses in its internal control over financial reporting existed. It further announced the removal of Diamond's CEO and CFO, who were reportedly placed on administrative leave. One report stated that the Company was negotiating severance packages with them.

Among other things, it seems likely that the Pringles transaction will be terminated, which will deprive the Company of the substantial benefits that were anticipated from the consummation of that transaction and will result in the need for Diamond to pay a termination fee of $60 million to P&G. In addition, it is also likely that Diamond will be in default of loan covenants and will have to incur greater expenses in restructuring that debt.

## II. PROCEDURAL HISTORY

Hialeah filed the first federal shareholder derivation action on November 28, 2011. Lucia filed his shareholder derivative action on December 19, 2011 (together, the "Actions"). The Actions alleged similar claims on behalf of Diamond against similar defendants.

On January 13, 2012, the Court entered an Order granting the parties' stipulation and proposed order relating the Actions to each other as well as to the Pending Securities Fraud Actions.

On January 31, 2012, the parties in the Actions submitted a stipulation and proposed order to the Court, providing, *inter alia*, that the Actions should be consolidated pursuant to Federal Rule of Civil Procedure 42 because they involve common questions, with such consolidation to apply to any subsequently-filed related derivative actions filed in this Court (as defined by Civil L.R. 3-12(a)), if any (the "Consolidation Order").

The Consolidation Order also provided for the appointment by the Court of Hialeah and Lucia as co-lead plaintiffs and for the approval of their selection of co-lead counsel. On February 7, 2012, this Court instructed the parties to show cause why co-lead plaintiffs and co-lead counsel should be appointed and why the Court should not first consider motions to appoint lead plaintiff and lead counsel.

//
//
//
//
//
//
//
//
//
//

## III. ARGUMENT

### A. While Not Required in Shareholder Derivative Actions, the Appointment of Lead Plaintiffs is Well Within the Discretion of the Court and This Court Has Previously Held that Such Appointment Furthers the Best Interests of the Corporation and Its Shareholders

The Actions are shareholder derivative actions asserting claims for violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duties and other common law claims. The Actions are not class actions and are therefore not subject to the lead plaintiff and lead counsel provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). As such, the provisions of that Act, requiring applications for appointment of lead plaintiff and approval of lead counsel, are not applicable here.

While appointment of lead plaintiffs in not statutorily mandated in shareholder derivative actions, some federal courts, including this Court, have found that appointing one or more lead plaintiffs is "consistent with F.R.C.P. 23.1's requirement that the plaintiff in a derivative action 'fairly and adequately represent the interests of shareholders or members similarly situated in enforcing the right of the corporation or association.'" *See In re Zoran Corp. Deriv. Litig.*, Case No. 06-05503 WHA (N.D. Cal. Jan. 8, 2007) (Order Granting Gerald del Rosario's Motion for Appointment as Lead Plaintiff, at p. 2) (a copy of this Order is attached as Exhibit A to the accompanying Declaration of Lawrence D. Levit in Support of Plaintiffs' Response to Order to Show Cause Regarding Appointment of Co-Lead Plaintiff and Co-Lead Counsel ("Levit Decl")); *see also Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Stumpf*, No. C 11-2369 SI, 2011 U.S. Dist. LEXIS 86421, at * 11-12 (N.D. Cal. Aug. 3, 2011) (appointing co-lead plaintiffs and co-lead counsel in derivative action).

Thus, in order to further F.R.C.P. 23.1's requirement of adequate representation, Plaintiffs seek appointment as lead plaintiffs and previously stipulated to such appointment.

### B. Hialeah and Lucia Are Well-Qualified To Serve As Lead Plaintiffs And Are Committed To Pursuing The Actions

Hialeah and Lucia are the only two shareholders that have filed derivative actions in this Court. They have agreed to the proposed structure, conferred with their counsel and concur that the appointment of co-lead plaintiffs will serve the best interests of Diamond in these cases. Among other things, both Mr. Lucia and Hialeah confirmed in their verifications signed under penalty of perjury and submitted with their initial complaints that they have owned Diamond stock since before the alleged wrongdoing alleged in the complaints, and have agreed to continue to hold such shares through the conclusion of this case. Both understand that they will assume fiduciary duties if appointed lead plaintiffs, are committed to being actively involved in this litigation, including traveling to attend hearings if necessary, and protecting the interests of the Company and its shareholders through prosecution of the Actions. In addition to filing well-drafted and detailed complaints, Hialeah and Lucia have retained counsel highly experienced in shareholder derivative litigation.

Moreover, because of the conflicts posed by the representation of both Diamond and the Individual Defendants by one law firm, Plaintiffs sent a letter through their counsel to the Company on February 2, 2012 demanding that the Company retain independent counsel, as described further below. Thus, each of the Plaintiffs has shown their dedication by pursuing their cases and each has worked cooperatively and diligently to litigate this case. Hialeah and Lucia are committed to litigating the Actions and are well-qualified to be lead plaintiffs.

### C. Motions To Appoint Lead Plaintiff and Lead Counsel Are Not Needed

Given the diligent and cooperative prosecution of this case to-date by Plaintiffs, and given the fact that only two cases have been filed and no one contests the request of Plaintiffs to be appointed lead plaintiffs, Plaintiffs do not believe it is necessary to file a motion for appointment of lead plaintiffs. Rather than expend resources, including Court resources, to contest the issue, Plaintiffs have agreed to work together and put their efforts into prosecuting the Actions.

When determining the appointment of lead plaintiff and lead counsel in derivative actions, courts consider "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel . . . " *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust*, 2011 U.S. Dist. LEXIS 86421, at * 9-10 (quoting *In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009)). Here, these factors have been satisfied.

Plaintiffs here have not only agreed to work together to prosecute the case against defendants, they have actively done so. After Mr. Lucia filed the second of these two Actions, Mr. Lucia and Hialeah have worked cooperatively together to diligently prosecute the litigation, reaching agreements and discussing a variety of issues in the case with defendants with one voice. They have cooperated with each other, and have been pursuing the Actions efficiently without duplication.

For example, on February 2, 2012, Plaintiffs, by their counsel, send a joint letter to Diamond's Board of Directors, demanding that the Company retain independent counsel as impermissible conflicts of interest exist due to the representation of all Defendants by one law firm. As stated in that letter, a copy of which is attached as Exhibit B to the Levit Decl, the simultaneous, concurrent representation of defendants with substantial conflicts of interest by one law firm requires disqualification of defendants' counsel or, at a minimum, the retention of independent counsel by Diamond. The Company's current counsel was selected by the very directors and officers of the Company who are now subjects of the criminal investigation and SEC investigation. The Company has valuable claims against such individuals as a result of the substantial damages caused to Diamond by the Individual Defendants' wrongful conduct, yet the Individual Defendants' hand-selected counsel is the only firm currently making critical litigation decisions in this action – decisions that are currently being taken by such one firm on behalf of *both* the Company and the Individual Defendants.

1  Nor can the Individual Defendants shrug off the seriousness of these issues by saying that the conflicts are just potential. The two highest ranking executives at Diamond (Defendant Mendes, the Chairman of the Board and CEO, and Defendant Neil, the CFO and Executive Vice President), who control the day-to-day activities of Diamond, were recently put on administrative leave (or, as the news reports indicated, fired). The Company's February 8, 2012 Form 8-K stated that the Audit Committee has now determined that the financial statements signed by Mendes and Neil in alleged compliance with the Sarbanes-Oxley Act during the Relevant Time Period were false and will need to be restated. Yet, the law firm hand-selected by Mr. Mendes, Mr. Neil and the Board is still representing Mendes and Neil and the Company, and purportedly making decisions about what is in Diamond's best interests at the very time it is also vigorously protecting the interests of Mendes and Neil.

Due to these substantial conflicts, Plaintiffs' counsel jointly sent the February 2, 2012 letter to Diamond's Board of Directors. Plaintiffs' counsel has thus already taken significant steps to protect the interests of Diamond in these cases.

Each of the Plaintiffs has further selected experienced counsel, and Plaintiffs' counsel have been efficiently prosecuting the case. Proposed co-lead counsel are qualified and experienced in litigation of this nature, as demonstrated by their firm resumes attached as Exhibits C and D to the Levit Decl.

//
//
//
//
//
//
//
//
//
//

Moreover, the appointment of two firms as co-lead counsel for Plaintiffs in this case is warranted. This is a complex derivative action involving Diamond's financial accounting. Due to the severity of the wrongdoing, the SEC has commenced a formal investigation and the U.S. Attorney's Office for the Northern District of California has opened a criminal investigation. Despite the fact that only one law firm is currently representing both the Company and the Individual Defendants in this case, Plaintiffs have demanded that the Company retain independent counsel. Moreover, in the Joint CMC Statement filed today, defendants conceded that at least two of the individual defendants will be hiring separate and additional counsel. In short order, Plaintiffs expect to have at least three or four law firms representing the different defendants in this case. In light of the expected coordination which will be required among such counsel, Plaintiffs will also have to monitor and coordinate related proceedings in the concurrently Pending Securities Fraud Actions and potentially the SEC action. Among other things, coordinated discovery will inevitably be required. The Company's Audit Committee is also already represented by separate counsel. Given these unique factual and procedural realities, a co-lead counsel structure for Plaintiffs is warranted and will promote the best interests of the Company and its shareholders in this action. Plaintiffs' counsel are both medium-sized firms specializing in plaintiffs' securities and derivative litigation and have agreed not to duplicate effort and to assign tasks efficiently, which they have already done up to this point in the litigation.

//
//
//
//
//
//
//
//

RESPONSE TO ORDER TO SHOW CAUSE
RE LEAD PLAINTIFF AND LEAD
COUNSEL

11

Case No.: CV-11-05692
Case No.: CV-11-06417

If the Court has any reservation about appointing two firms as co-lead counsel, Plaintiffs also respectfully suggest that the Court may wish, as an alternative, to appoint individual lawyers as co-lead counsel rather than firms. Plaintiffs are aware that many judges prefer to appoint individual lawyers rather than firms to leadership positions. If the Court would be inclined to do so, Plaintiffs would suggest that Mr. Bottini and Mr. Levit be appointed Co-Lead Counsel. Each will ensure that only a core group of attorneys from each firm will work on this case, thus eliminating any risk of duplication of effort. For Mr. Bottini's firm, Edward D. Chapin and Keith Cochran would also work on the case as needed. For Mr. Levit, Ian Berg and Takeo Kellar would work on the case as needed. Thus, no more than six lawyers from both firms would work on the case, absent unforeseen circumstances. Plaintiffs believe such staffing would be appropriate given the significance of this case, and would further note that Defendants' counsel lists at least four lawyers from its firm as counsel in this case and has indicated in the Joint CMC Statement being submitted that several individual defendants will be retaining their own counsel in this case soon. Thus, defendants' counsel will shortly be comprised of at least 7-8 lawyers (and probably more likely 10-15).

## IV.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court approve the parties' stipulation and appoint Board of Trustees of City of Hialeah Employees' Retirement System and Dave Lucia as co-lead plaintiffs and approve of Abraham, Fruchter & Twersky, LLP and Chapin Fitzgerald Sullivan & Bottini LLP as Plaintiffs' co-lead counsel, and for such other and further relief as is just.

//
//
//
//
//
//
//

| | | |
|---|---|---|
| 1 | Dated: February 10, 2012 | ABRAHAM, FRUCHTER & TWERSKY, LLP |
| 2 | | By: /s/ Ian D. Berg |
| | |     Ian D. Berg, Esq. |

Ian D. Berg
Takeo Kellar
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Phone: (858) 792-3448
Fax: (858) 792-3449

-and-

Mitchell M.Z. Twersky
Lawrence D. Levit
Atara Hirsch
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone:  (212) 279-5050
Facsimile:  (212) 279-3655

Attorneys for Plaintiff Board of Trustees of City of Hialeah Employees' Retirement System

Dated: February 10, 2012  CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP

By: /s/ Francis A. Bottini, Jr.
    Francis A. Bottini, Jr. Esq.

Edward D. Chapin
Francis A. Bottini, Jr.
Douglas J. Brown
550 West "C" Street, Suite 2000
San Diego, CA 92101
Phone: (619) 241-4810
Fax: (619) 995-5318

Attorneys for Plaintiff Dave Lucia

Pursuant to General Order No. 45 Section X(B), all signatories concur in filing this response.

Dated: February 10, 2012  By:  /s/ *Francis A. Bottini, Jr.*
    Francis A. Bottini, Jr., Esq.

RESPONSE TO ORDER TO SHOW CAUSE
RE LEAD PLAINTIFF AND LEAD
COUNSEL

13

Case No.: CV-11-05692
Case No.: CV-11-06417

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of the registered users.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 10, 2012.

/s/ *Francis A. Bottini, Jr.*
Francis A. Bottini, Jr., Esq.
